656 S.E.2d 782

**The STATE, Respondent,**

v.

**Legaree Leavy EVANS, Appellant.**

No. 4332.

Court of Appeals of South Carolina.

Submitted Jan. 2, 2008.

Decided Jan. 16, 2008.

422

Appellate Defender Kathrine H. Hudgins, of the South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

HUFF, J.

Appellant, Legaree Leavy Evans, was indicted for and convicted of burglary in the first degree and possession of burglary tools. He appeals, asserting the trial judge erred in denying his motion for directed verdict on the first-degree burglary charge because the building in question did not qualify as a dwelling. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

Around 4:30 a.m. on December 21, 2004, a neighbor getting ready for work noticed the lights on at the Shaw home on Gully Falls road in Pickens County. Because the neighbor knew the Shaws were rarely at the home and it was unusual to see activity there, she called 9-1-1. Deputies Porter and Sailors arrived at the home to discover the lights on and the door open. Deputy Sailors observed someone near the back of a truck in the driveway, who turned and ran back toward the house. After Deputy Sailors radioed that a white male wearing an orange shirt was running from the truck into the woods, Deputy Porter heard someone behind the house and went after him. There, he found appellant face down on the ground with arms spread out. Appellant had a flashlight and some gloves with him. A subsequent search of the truck revealed tools commonly used in burglaries.

Charles Shaw testified that he owned the home on Gully Falls Road for the past ten years and this was a secondary residence. He described the property as heavily wooded, mountainous, and secluded. His family had been "living in it off and on, going up there as a secondary house ... until about three years ago." Because of his wife's medical condition and the treatments she received, they were unable to live there or spend significant amounts of time there anymore. However, Mr. Shaw testified he went to the home once every two weeks or once a month, the utilities were all on, and the house was "ready to be lived in." The last time he and his wife had been to the property prior to December 21st was December 5th of that year. They remained at the house for about two and a half to three hours on that day, retrieving some Christmas decorations they had stored there, storing some other seasonal items, and sitting in the home talking for about an hour and a half before they left. On cross examination, Mr. Shaw agreed they had been using the house as a storage building "as circumstances prevented [them] from living there" for the past three years.

Mr. Shaw and his wife met Detective Lovell and Lieutenant Robinson at the home the following day. When Mr. Shaw first entered the house, he found that plastic storage containers he had used to store things had been emptied of their

contents and someone was using the containers to pack other items from the home, such as teapots, music boxes, and plates. Linens and towels from the home were used to pad the items in the containers. Missing from the home were numerous teapots, a child's wagon, and a VCR.

Following the close of the State's case, appellant moved for a directed verdict on the first degree burglary charge, arguing there was no evidence the house was a dwelling at the time of the alleged offense. The trial court denied the motion, finding it was a factual question for the jury. The jury returned verdicts of guilty on both the burglary in the first degree and possession of burglary tools charges.

## LAW/ANALYSIS

The only issue raised on appeal is whether the trial court erred in denying appellant's motion for directed verdict on the first-degree burglary charge because the building did not meet the statutory definition of a dwelling. Appellant contends the undisputed evidence shows the property in question was only a storage building, and though it had once been used as a part-time residence, nobody had occupied or resided in it for at least three years. Accordingly, he maintains it was no longer a dwelling house. We disagree.

In reviewing a directed verdict motion, the trial court is concerned with the existence of evidence, not its weight. *State v. Parris*, 363 S.C. 477, 481, 611 S.E.2d 501, 502–03 (2005). A defendant is entitled to a directed verdict when the State fails to present evidence on a material element of the offense charged. *State v. Brown*, 360 S.C. 581, 586, 602 S.E.2d 392, 395 (2004). On appeal from the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. *Id.*

"A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and ... the entering or remaining occurs in the nighttime." S.C.Code Ann. § 16–11–311(A)(3) (2003). "Dwelling house" as used in the arson and burglary statutes is defined as "any house, outhouse, apartment, building, erection, shed or box in which there sleeps a

... person who lodges there with a view to the protection of property." S.C.Code Ann. § 16–11–10 (2003).

In the 1979 case of *State v. Ferebee*, 273 S.C. 403, 257 S.E.2d 154 (1979) our Supreme Court held that a vacant apartment unit, abandoned a week prior by former tenants, was not a dwelling house for purposes of the burglary statute. *Id.* at 405, 257 S.E.2d at 155. The court found section 16–11–10 required the apartment have an identifiable occupant sleeping or residing therein to so qualify, and while the temporary absence of occupants will not prevent a residence from becoming the subject of a burglary, it required that the occupant leave with the purpose of returning in order for the apartment to be considered a dwelling. *Id.* In applying *Ferebee* to an arson case, our Supreme Court in *State v. Glenn*, 297 S.C. 29, 374 S.E.2d 671 (1988) determined, where the occupant had left over $10,000 worth of personal possessions in a mobile home and had returned to the mobile home on numerous occasions to gather some possessions, there was sufficient evidence she did not vacate the home but left with the intention of returning. *Id.* at 32, 374 S.E.2d at 672. Accordingly, the court found the trial court did not err in failing to direct a verdict on the second degree arson charge based on Glenn's argument that the home did not constitute a dwelling house under section 16–11–110. *Id.* Thus, "the test of whether a building is a dwelling house turns on whether the occupant has left with the intention to return." *Id.* (analyzing *Ferebee*). Temporary absence from a "dwelling" is irrelevant. *State v. White*, 349 S.C. 33, 36, 562 S.E.2d 305, 306 (2002).

Here, there is sufficient evidence of the Shaws' intent to return to the mountain property. As noted by Mr. Shaw, they visited the home about once every two weeks or month, the utilities were all on in the home, and it was "ready to be lived in." They had previously been "living in [the home] off and on," and the only reason the Shaws had not been staying overnight in the home the last three years was his wife's current medical condition prevented them from doing so. *See* William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 445 (4th ed. 2002) ("[A] person could have more than a single dwelling house, any of which might be the object of a burglary despite the occupant's absence for extended periods of time, so long as he had an

intention to return. Consequently, a vacation cottage would qualify as a dwelling house even though the owner had not been there in months."). Accordingly, we find no error in the trial court's denial of appellant's motion for directed verdict on the first degree burglary charge.

Based on the foregoing, Evans' conviction is

**AFFIRMED**

PIEPER, J., and GOOLSBY, A.J., concur.